FILED

2023 Aug-29  PM 03:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| TAMMY HOWARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  2:22-cv-00433-HNJ |
| | ) | |
| SOCIAL SECURITYADMINISTRATION, | ) | |
| COMMISSIONER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Tammy Howard seeks judicial review pursuant to 42 U.S.C. § 405(g) of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner"), regarding her claim for a period of disability and disability insurance benefits.  The undersigned carefully considered the record, and for the reasons expressed herein, **AFFIRMS** the Commissioner's decision.[1]

## LAW AND STANDARD OF REVIEW

To qualify for benefits, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.  The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including the entry of final judgment.  (Doc. 17).

in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant suffers a disability, the Commissioner, through an Administrative Law Judge (ALJ), works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant at the first four steps of this five-step process; the Commissioner sustains the burden at step five, if the evaluation proceeds that far. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).

In the first step, the claimant cannot be currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove the impairment is "severe" in that it "significantly limits [the] physical or mental ability to do basic work activities . . . ." *Id.* at § 404.1520(c).

At step three, the evaluator must conclude the claimant is disabled if the impairments meet or medically equal one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02. *Id.* at § 404.1520(d). If a claimant's impairment meets the applicable criteria at this step, that claimant's impairment would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii),

404.1525.  That is, a claimant who satisfies steps one and two qualifies automatically for disability benefits if the claimant suffers a listed impairment.  *See Williams v. Astrue,* 416 F. App'x 861, 862 (11th Cir. 2011) ("If, at the third step, [the claimant] proves that [an] impairment or combination of impairments meets or equals a listed impairment, [the claimant] is automatically found disabled regardless of age, education, or work experience." (citing 20 C.F.R. §§ 404.1520, 416.920; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997)).

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluation proceeds to the fourth step, where the claimant demonstrates an incapacity to meet the physical and mental demands of past relevant work.  20 C.F.R. § 404.1520(e).  At this step, the evaluator must determine whether the claimant has the residual functional capacity ("RFC") to perform the requirements of past relevant work.  *See id.* § 404.1520(a)(4)(iv).  If the claimant's impairment or combination of impairments does not prevent performance of past relevant work, the evaluator will determine the claimant is not disabled.  *See id.*

If the claimant succeeds at the preceding step, the fifth step shifts the burden to the Commissioner to provide evidence, considering the claimant's RFC, age, education and past work experience, that the claimant is capable of performing other work.  *Id.* § 404.1512(b)(3), 404.1520(g).  If the claimant can perform other work, the evaluator will not find the claimant disabled.  *See id.* § 404.1520(a)(4)(v); *see also id.* § 404.1520(g).

3

If the claimant cannot perform other work, the evaluator will find the claimant disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g).

The court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the proper legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The court reviews the ALJ's "'decision with deference to the factual findings and close scrutiny of the legal conclusions.'" *Parks ex rel. D.P. v. Comm'r, Social Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Indeed, "an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (citing 42 U.S.C. § 405(g)). Although the court must "scrutinize the record as a whole . . . to determine if the decision reached is reasonable . . . and supported by substantial evidence," the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ. *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . . is 'more than a mere scintilla,' . . . [and] means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 139 S. Ct. at 1154 (citations omitted). Therefore, substantial evidence exists even if the evidence preponderates against the Commissioner's decision. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## FACTUAL AND PROCEDURAL HISTORY

Howard protectively filed an application for a period of disability and disability insurance benefits on June 3, 2018, alleging disability as of December 15, 2017. (Tr. 163-66). On September 21, 2018, the Commissioner denied her claims. (Tr. 86-90). On October 1, 2018, Howard filed a request for a hearing. (Tr. 92-93). On October 21, 2019, the ALJ held a hearing. (Tr. 38-64, 554-80). On December 31, 2019, the ALJ issued an opinion denying Howard's claims. (Tr. 8-25, 524-41). On February 13, 2020, Howard filed a request for review of the ALJ's opinion before the Appeals Council. (Tr. 148-150). On May 5, 2020, the Appeals Council denied Howard's request for review. (Tr. 542-546).

Subsequently, Howard filed a complaint in this court, which remanded the case on March 23, 2021, for further administrative proceedings pursuant to sentence four of 42. U.S.C. § 405(g). (Tr. 547-48). The Appeals Council then vacated the final decision of the Commissioner and remanded the case to the ALJ to address several issues. (Tr. 549-553). On November 2, 2021, the ALJ held a second hearing. (Tr. 490-523). On May 24, 2022, the ALJ issued a second opinion denying Howard's claims. (Tr. 463-489).

Applying the five-step sequential process, the ALJ found at step one that Howard did not engage in substantial gainful activity after December 15, 2017, her alleged disability onset date. (Tr. 469). At step two, the ALJ found Howard manifested the severe impairments of obesity, generalized anxiety disorder, major depressive disorder,

irritable bowel syndrome, and fibromyalgia.  (Tr. 470).  At step three, the ALJ found

that Howard's impairments, or combination of impairments, did not meet or medically

equal any impairment for presumptive disability listed in 20 C.F.R. Part 404, Subpart P,

Appendix 1.  (*Id.*).

Next, the ALJ found that Howard exhibited the residual functional capacity

("RFC") to perform light work, with the following additional limitations:

> [S]he can frequently handle, finger, and feel with the bilateral upper
> extremities; occasionally climb ramps and stairs; never climb ladders,
> ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl;
> have occasional exposure to temperature extremes, dust, odors, fumes,
> and pulmonary irritants; and have no exposure to unprotected heights,
> hazardous machinery, or commercial driving. She can understand and
> remember simple instructions; maintain attention and concentration to
> carry out simple instructions in at least two hour intervals over an 8 hour
> work day; have occasional contact with coworkers and the general public;
> and adapt to infrequent, gradual changes in the work environment.

(Tr. 473).

At step four, the ALJ determined Howard did not retain the ability to perform

her past relevant work as a retail department manager and store clerk.  (Tr. 480).  At

step five, the ALJ determined, considering Howard's age, education, work experience,

and RFC, a significant number of other jobs exist in the national economy that she can

perform.  (Tr. 481).  Accordingly, the ALJ determined Howard has not suffered a

disability, as defined by the Social Security Act, since December 15, 2017.  (Tr. 482).

Howard had until June 28, 2022, to file exceptions to the ALJ's decision or

request an extension of time to do so with the Appeals Council.  (Doc. 8-1 at 3).  The

Appeals Council does not possess any exceptions or requests from Howard. (*Id.*). Therefore, the ALJ's decision did not become final until July 24, 2022, the 61st day after May 24, 2022. (*Id.*).[2]

On April 6, 2022, Howard prematurely filed her complaint with the court seeking review of the ALJ's decision. (Doc. 1). Because the Appeals Council did not assume jurisdiction over Howard's case prior to the expiration of the 60-day period following the ALJ's decision, Plaintiff received a "final decision" as of July 24, 2022. Thus, the court deems Howard's case ripe for review.

## ANALYSIS

In this appeal, Howard argues the ALJ's residual functional capacity finding lacks substantial evidentiary support and the ALJ erred in considering her failure to seek treatment. For the reasons discussed below, the undersigned concludes Howard's contentions do not warrant reversal.

---

[2] "Any time within 60 days after the date of the hearing decision, the Appeals Council may decide to assume jurisdiction of your case even though no written exceptions have been filed.

…

If no exceptions are filed and the Appeals Council does not assume jurisdiction of your case, the decision of the administrative law judge or administrative appeals judge becomes the final decision of the Commissioner after remand."

20 C.F.R. § 416.1484(c) & (d).

## I.      Substantial Evidence Supports the ALJ's Determination

Howard contends substantial evidence does not support the ALJ's determination.  As previously discussed, at step four of the sequential analysis the ALJ formulates a claimant's RFC by assessing his or her "ability to meet the physical, mental, sensory, and other requirements of work."  20 C.F.R. § 416.945(a)(4).  The claimant's RFC represents "the most [he or she] can still do despite [their] limitations."  *Id.* at § 416.945(a)(1).  Assessing a claimant's RFC lies within the exclusive province of the ALJ. *See id.* at § 416.927(d)(2) ("[T]he final responsibility for deciding [a claimant's RFC] is reserved to the Commissioner."); *id.* at § 416.946(c) ("[T]he administrative law judge . . . is responsible for assessing [a claimant's] residual functional capacity."); *Oates v. Berryhill*, No. 17-0130-MU, 2018 WL 1579475, at *8 (S.D. Ala. Mar. 30, 2018) ("The responsibility for making the residual functional capacity determination rests with the ALJ."); *Del Rio v. Berryhill*, No. 3:16-CV-00489-RFC, 2017 WL 2656273, at *8 (W.D. Tex. June 20, 2017) ("The ALJ has the sole responsibility of determining Plaintiff's RFC . . . .").

Howard argues the ALJ improperly found she possessed the residual functional capacity to perform a limited range of light work.

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If

someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. at § 416.967(b).

Furthermore, Howard claims "all her problems are related to fibromyalgia." (Doc. 19 at 21). "[F]ibromyalgia . . . is 'characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months.'" *Laurey v. Comm'r of Soc. Sec.*, 632 F. App'x 978, 987-88 (11th Cir. 2015) (citing SSR 12-2p, 77 Fed.Reg. 43640, 43641 (July 25, 2012)). "The symptoms of fibromyalgia 'can wax and wane so that a person may have bad days and good days.'" *Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 142 (11th Cir. 2019) (citing SSR 12-2p, 77 Fed. Reg. 43644 (July 25, 2012)). "For this reason, 'longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in establishing both the existence and severity of [fibromyalgia].'" *Id.* at 142-43 (alteration in original) (citing SSR 12-2p, 77 Fed. Reg. 43642 (July 25, 2012)).

However, it remains settled in the Eleventh Circuit that "a lack of objective evidence" constitutes the "hallmark" of fibromyalgia. *Moore*, 405 F.3d at 1211 (11th Cir. 2005); *accord Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x. 855, 863 (11th Cir. 2017) (per curiam); *Brown-Gaudet-Evans v. Comm'r of Soc. Sec.*, 673 F. App'x. 902, 906 (11th Cir. 2016) (per curiam); *Hernandez v. Comm'r of Soc. Sec.*, 523 F. App'x. 655, 657 (11th Cir. 2013) (per curiam); *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x. 56, 63 (11th Cir. 2010) (per curiam). Fibromyalgia "often lacks medical or laboratory signs, and is generally diagnosed mostly

on a[n] individual's described symptoms." *Moore*, 405 F.3d at 1211.[3] Thus, "a claimant's

subjective complaints of pain are often the only means of determining the severity of a

patient's          condition          and          the          functional          limitations          caused

thereby[,] . . . 'render[ing] . . . over-emphasis upon objective findings inappropriate.'"

*Somogy*, 366 F. App'x at 64 (fourth alteration in original) (quoting *Rogers v. Comm'r of Soc.*

*Sec.*, 486 F.3d 234, 248 (11th Cir. 2007)).

Therefore, "[t]he pain standard also guides the ALJ's evaluation when a claimed

disability is fibromyalgia." *Bailey*, 791 F. App'x at 142; *see also Laurey*, F. App'x at 987

("The ALJ uses these same standards to evaluate a claimant's fibromyalgia.").

> A three-part "pain standard" applies when a claimant attempts to establish
> disability through her own testimony of pain or other subjective
> symptoms. *Wilson*[ *v. Barnhart*], 284 F.3d [1219,] 1225[ (11th Cir. 2002)].
> The pain standard requires evidence of an underlying medical condition
> and either objective medical evidence that confirms the severity of the
> alleged pain arising from that condition or a showing that the objectively

---

[3] As recognized in *Stewart v. Apfel*, No. 99-6132, 2000 U.S. App. LEXIS 33214 (11th Cir. Dec. 20, 2000):

> The American College of Rheumatology has described fibromyalgia as:

> > '[A] syndrome [that] is a common form of generalized muscular pain
> > and fatigue. The name "fibromyalgia" means pain in the muscles and
> > the fibrous connective tissues (the ligaments and tendons). . . .
> > Fibromyalgia is especially confusing and often misunderstood because
> > almost all its symptoms are also common in other conditions. In
> > addition, it does not have a known cause . . . .Unfortunately, because
> > certain syndromes lack physical and laboratory findings (signs), but
> > depend mostly on a person's report of complaints and feelings
> > (symptoms), these syndromes are often viewed as not being real or
> > important.'

*Stewart*, 2000 U.S. App. LEXIS 33214, at *7-8 (quoting Arthritis Foundation & American College of Rheumatology, *Arthritis Information: Fibromyalgia* (1992)).

> determined medical condition is of such severity that it can be reasonably
> expected to give rise to the alleged pain. *Id.*

*Porto v. Acting Comm'r of Soc. Sec. Admin.*, 851 F. App'x 142, 148 (11th Cir. 2021). A claimant's testimony coupled with evidence that meets this standard suffice "to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted).

Social Security Ruling ("SSR") 16-3p mandates the ALJ "will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file." SSR 16-3p, 2016 WL 1119029, *7 (Mar. 16, 2016). An ALJ rendering findings regarding a claimant's subjective symptoms may consider a variety of factors, including: the claimant's daily activities; symptom location, duration, frequency, and intensity; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; and other factors concerning functional limitations and restrictions due to symptoms. *See* 20 C.F.R. §§ 416.929(c)(3), (4); *see also Bailey*, 791 F. App'x at 143 ("'If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects' of the fibromyalgia symptoms, the ALJ will 'consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and

statements by other people about the person's symptoms.'" (citing SSR 12-2p, 77 Fed. Reg. 43643 (July 25, 2012))).

SSR 16-3p further explains that the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent review can assess how the adjudicator evaluated the individual's symptoms." 2016 WL 1119029 at *9; *see also Wilson*, 284 F.3d at 1225 (If an ALJ discredits a claimant's subjective testimony, the ALJ "must articulate explicit and adequate reasons for doing so.").

During her October 21, 2019, hearing, Howard stated she could drive locally but not on interstates because she becomes nervous, confused, and scared. (Tr. 46, 48). She claimed she forgets her location while driving. (Tr. 48). Accordingly, Howard only drives when she must. (Tr. 54). She averred she cannot work due to her anxiety. (Tr. 47). Howard also explained she aches all over her body, has no energy, and sometimes has trouble arising from her bed. (Tr. 48). She asserted she cannot think straight and tends to forget things. (*Id.*). Howard declared she suffers from vertigo as well. (Tr. 49).

Howard discussed leaving her job due to her anxiety and stomach. (*Id.*). She described battling diarrhea, repeatedly using the restroom, and suffering bowel incontinence. (Tr. 50). Howard testified the bowel incontinence occurs two to three times a week, and she suffers constipation up to four weeks at a time. (*Id.*). She attested she does not enjoy going to a store and being around people because she suffers from

12

claustrophobia.  (Tr. 51).

Howard's typical day consists of taking a hot bath to help with her hands, feet, and legs as they hurt in the morning.  (Tr. 51).  She then cleans up after her dogs, cooks breakfast, and "piddle[s] around" the house and yard.  (Tr. 52).  Howard also stated she and her son work on fences to keep their dogs separated from their horses.  (*Id.*).  She then fixes lunch and takes a nap in the afternoon.  (*Id.*).  Howard explained she experiences asthma attacks when she gets hot.  (*Id.*).  She forgets she commenced cooking a meal unless she stays in the kitchen.  (Tr. 53).  Howard sometimes forgets to take her medication as well.  (*Id.*).

During her November 2, 2021, hearing, Howard testified she believes she cannot work due to her fibromyalgia.  (Tr. 498).  She also suffers from an unhealthy gut, anxiety, asthma, claustrophobia, and depression.  (*Id.*).  Howard explained her fibromyalgia causes her to suffer "brain fog" and become forgetful.  (Tr. 499).  The brain fog also causes lack of concentration.  (*Id.*).  She stated she suffers from stiffness and soreness in her entire body as well.  (Tr. 499-500).  Furthermore, Howard experiences a tingly sensation in her hands and arms.  (Tr. 500).  She expressed the fibromyalgia constantly affects her arms, hands, and feet.  (Tr. 501).  Howard claims she cannot engage in repetitive motions because she will suffer pain the following day.  (Tr 519).  Howard received a prescription for Cymbalta to treat her fibromyalgia which really helped her. (Tr. 509).  She no longer takes Cymbalta due to lack of insurance.  (*Id.*).

Howard averred she needs two hands to pick up a gallon of milk because she

does not have the strength to pick up items with one hand. (Tr. 500). She can no longer pick up a bag of dog or horse food. (*Id.*). Howard expounded she cannot lift 50 pounds but could lift her 35-pound granddaughter. (*Id.*). She admitted she suffers pain the following day after lifting her granddaughter. (Tr. 501). Howard also develops foot pain after standing for more than 30 minutes. (*Id.*). She received a recommendation to wear a walking boot to treat her foot pain, but the boot then causes her back pain. (*Id.*).

Howard claimed her unhealthy gut does not allow her to digest food properly, which causes her body not to function properly. (*Id.*). She averred she never knows when she will have to use the restroom. (Tr. 503). Howard explains she frequently suffers from diarrhea and bowel incontinence. (Tr. 519). Howard regularly received Zantac for her digestive issues, but she no longer takes it due to a lack of insurance. (Tr. 512).

Howard further explained her asthma does not allow her to breathe when conditions are hot or she is around strong, cleaning chemicals. (Tr. 502). Howard uses her inhaler about four times a week. (Tr. 503).

Howard's anxiety does not allow her to be around people. (*Id.*). Due to her anxiety, she angers quickly and cannot control her temper. (Tr. 521). She used to take Venlafaxine and Hydroxyzine for her anxiety and depression, but she no longer does because she lacks insurance. (Tr. 504).

Howard explained a typical day for her involves taking a bath to get "loosened

up" because she wakes up stiff. (Tr. 505). She also watches television, stays in her room, and feeds her dogs. (*Id.*). Howard expressed that she keeps her room clean, launders her clothes, sweeps, washes dishes, and sometimes cooks. (Tr. 506).

Howard's Function Report states she cannot concentrate or be around people. (Tr. 225). She suffers from anxiety and panic attacks. (*Id.*). During an average day, Howard takes her medication, eats, watches television, ventures outside and sits with her dogs, "picks up sticks" to try and clean up, cleans the kitchen, and cooks. (Tr. 226). In addition, she cares for her dogs, cats, horses, and guinea pig with the help of her son. (*Id.*). Howard expressed she cannot be around people, go places, or drive. (*Id.*). Her quality of sleep suffers because her mind races, and she frequently has to use the restroom at night. (*Id.*).

Howard has no issue with her personal care. (*Id.*). She also does not need reminders to take care of her personal needs and grooming. (Tr. 227). Howard, however, does use alarms as reminders to take her medication. (*Id.*). She prepares "simple" meals daily, and cleans her kitchen while doing so as not to forget about her cooking. (*Id.*). Most days Howard attempts to perform household chores with the help of her son. (*Id.*). The time it takes to complete her chores varies. (*Id.*).

Howard does not drive because of her anxiety and shops seldomly at night to avoid large groups of people. (Tr. 228). She cannot pay bills because she forgets about them, and thus, her son helps her. (*Id.*). Howard also cannot handle a savings account, a checkbook, money orders, or money. (*Id.*). She can count change, however. (*Id.*).

Howard likes taking care of her animals when she feels up to it. (Tr. 229). She hardly goes anywhere or sees anyone because of her ailments. (Tr. 229-230). Howard's ailments also affect her memory, concentration, understanding, and ability to follow instructions. (Tr. 230). She can only pay attention for a very short period of time, and she does not finish what she starts. (*Id.*). Howard does not follow written or spoken instructions well. (*Id.*). She gets along "ok" with authority figures. (Tr. 231). Howard also stated she does not handle stress or change well. (*Id.*).

Howard's friend, Whitney Reeves, submitted a Third Party Function Report which largely reiterates the information in Howard's Function Report. (Tr. 214-220). Reeves's Function Report states that it takes Howard 30 minutes to prepare her food, but she experiences trouble cooking. (Tr. 216). She reported that Howard cleans and does a little yardwork for about one to two hours daily. (*Id.*). Reeves claims Howard's ailments affect her talking, hearing, memory, ability to complete tasks, concentration, understanding, ability to follow instructions, and relationships with others. (Tr. 219). She discussed Howard could walk half a mile and needs 10 to 15 minutes of rest before she can resume walking. (*Id.*). Finally, Reeves explained that Howard does not get along with authority figures or people at all. (Tr. 220).

The ALJ, citing to and relying upon the record evidence, applied the pain standard to find that Howard's

> medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not

entirely consistent with the medical evidence and other evidence in the record . . . .

(Tr. 474). Substantial evidence supports the ALJ's finding.

On April 11, 2017, Alabama Digestive Diseases saw Howard for bilateral abdominal pain and diarrhea. (Tr. 381). Howard's physical examination yielded normal results other than exhibiting epigastric tenderness and lower left quadrant abdominal pain. (Tr. 383). Furthermore, Howard's stool study portrayed unremarkable results as well. (Tr. 385-86, 412-15).

On August 8, 2017, Robert Mitchell, M.D., diagnosed Howard with asthma, lipoma, restless leg syndrome, and myoclonus. (Tr. 297). Howard's physical examination displayed normal results except in her musculoskeletal system, breast, and pelvic. (*Id.*). On August 25, 2017, Dr. Mitchell diagnosed Howard with a neoplasm in her right thigh. (Tr. 296). Yet, Howard's physical examination appeared normal. (*Id.*). On September 20, 2017, Dr. Mitchell diagnosed Howard with anxiety, depression, and hyperhidrosis. (Tr. 295). During that visit, Howard produced an unremarkable physical examination. (*Id.*). On December 18, 2017, Dr. Mitchell diagnosed Howard with anxiety, depression, and insomnia. (Tr. 294). Howard's physical examination yielded normal results at that time. (*Id.*).

On January 30, 2018, Grayson & Associates conducted an initial evaluation of Howard. (Tr. 399). During a mental status examination, Howard appeared tearful, depressed, and anxious. (Tr. 400). She also presented a flattened affect. (*Id.*).

17

Otherwise, Howard exhibited an unremarkable mental status examination.  (*Id.*).

On March 22, 2018, St. Vincent's Blount Emergency Department treated Howard for chest pain and anxiety.  (Tr. 335, 728, 735).  Aside from having mild distress and being anxious and tearful, Howard's physical examination generated unremarkable results.  (Tr. 339-40, 736).  On March 24, 2018, St. Vincent's Blount Emergency Department treated Howard for a brain concussion.  (Tr. 308, 729).  Howard produced normal results on her physical examination.  (Tr. 312).

On April 12, 2018, Grayson & Associates conducted a follow-up visit with Howard.  (Tr. 394).  Howard endorsed depression, low energy, anxiety, panic attacks, and decreased sleep.  (*Id.*).  She denied having low interests, manic symptoms, irritability, OCD symptoms, focus problems, suicidal thoughts, homicidal thoughts, hallucinations, delusions, or decreased appetite.  (*Id.*).  Howard yielded a largely normal mental status exam, except she appeared tearful, depressed, and anxious.  (Tr. 395).  She also displayed a blunted affect, and poor insight and judgment.  (*Id.*).

On June 7, 2018, Grayson & Associates conducted a follow-up visit with Howard.  (Tr. 390, 407, 456).  Howard reported depression, low energy, anxiety, panic attacks, and decreased sleep and appetite.  (*Id.*).  She denied experiencing low interests, manic symptoms, irritability, OCD symptoms, focus problems, suicidal thoughts, homicidal thoughts, hallucinations, and delusions.  (*Id.*).  Howard demonstrated a largely normal mental status exam, except she appeared tearful, depressed, and anxious.  (Tr. 391, 408, 457).

On July 2, 2018, Alabama Digestive Diseases saw Howard for irritable bowel syndrome with diarrhea. (Tr. 377). Alabama Digestive Diseases noted that Howard's stool studies tested negative, and her colonoscopy completed in August 2016 portrayed normal findings, which included negative random biopsies for microscopic colitis. (Tr. 379). Howard also generated unremarkable findings as to her physical examination. (Tr. 379-80).

On August 8, 2018, Grayson & Associates conducted a follow-up visit with Howard. (Tr. 403, 452). Howard reported improvements in her depression. (*Id.*). She also endorsed anxiety and denied low energy, low interests, manic symptoms, irritability, panic attacks, OCD symptoms, focus problems, suicidal thoughts, homicidal thoughts, hallucinations, delusions, and decreased sleep or appetite. (*Id.*). In addition, Howard yielded a normal mental status exam, except she appeared depressed and anxious. (Tr. 404, 453).

On August 23, 2018, St. Vincent's Blount Emergency Department treated Howard for right knee pain. (Tr. 712). Although Howard exhibited swelling on the lateral portion of her right knee, her knee maintained stability with full extension and flexion without difficulty, and it sustained no bruising. (Tr. 713). The rest of Howard's physical examination appeared unremarkable. (*Id.*).

On October 23, 2019, OrthoAlabama Spine & Sports diagnosed Howard with fibromyalgia, median neuropathy, and right pedal discomfort. (Tr. 28, 696). An MRI of Howard's right foot portrayed mild degenerative changes, small MTP joint effusions

and small hindfoot effusions, and mild tenosynovitis of the posterior tibialis. (Tr. 34, 702). Howard experienced moderate discomfort with palpation over the right dorsal midfoot area and tenderness with multifocal soft tissue palpation in the anterior aspect of the shoulders, subacromial regions, superior trapezii, trochanteric bursal areas, and anserine bursal regions. (Tr. 28, 696). Otherwise, Howard's physical examination yielded unremarkable findings. (*Id.*).

On October 29, 2019, OrthoAlabama saw Howard for right foot pain. (Tr. 30, 698). A physical examination of Howard's foot resulted in normal results. (Tr. 31, 699). On November 8, 2019, OrthoAlabama reaffirmed fibromyalgia as a principal source of Howard's pain. (Tr. 32, 700). Howard experienced tenderness to multifocal soft tissue palpation in the anterior/subacromial areas of the shoulders, superior trapezii, and of the trochanteric bursal areas. (*Id.*). The rest of Howard's physical examination yielded unremarkable results. (*Id.*).

In summary, the forgoing review of the record evidence demonstrates substantial evidence supports the ALJ's findings.

## II.   The ALJ Did Not Rely Solely on Howard's Lack of Treatment for the Determination

Howard contends the ALJ did not properly consider her poverty in finding that she did not seek regular treatment for her impairments after 2018. An ALJ cannot discredit a claimant's testimony as to the intensity or persistence of his or her pain solely based on the failure to obtain medical treatment he or she cannot afford:

> "[R]efusal to follow prescribed medical treatment without a good reason will preclude a finding of disability," and "poverty excuses noncompliance." *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir.1988). Additionally, when an ALJ relies on noncompliance as the *sole* ground for the denial of disability benefits, and the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment, the ALJ is required to determine whether the claimant was able to afford the prescribed treatment. *See id.* at 1214.

*Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (emphasis added).

In the circumstances at bar, the ALJ remarked

> there is no evidence of follow up visits or emergency department visits for exacerbation of symptoms of irritable bowel syndrome, fibromyalgia, anxiety, or depression since 2018. The claimant stated that she is unable to obtain treatment, including medications, due to lack of insurance. While financial constraints may make medical intervention and compliance more difficult, a lack of health insurance does not equate to a finding of disability. Moreover, the evidence reveals the claimant did not exhaust all efforts to seek treatment, with no visits to free or subsidized clinics evidenced, and personal denial of emergency room visits or hospitalizations.

(Tr. 493).

Even if the ALJ's allusions to Howard's failure to seek free or subsidized treatment infers an adverse assessment of her pain symptoms, the ALJ did not rely solely on such noncompliance as a ground for denial of benefits. *Ellison*, 355 F.3d at 1275 ("This case is distinguishable from *Dawkins* because, unlike in *Dawkins*, the ALJ's determination that Ellison was not disabled was not significantly based on a finding of noncompliance."). As recounted, the ALJ largely relied upon the balance of the record for her determination.

To the extent Howard argues the ALJ did not develop a full and fair record, an ALJ only sustains an obligation to develop the record for at least 12 months preceding the month in which a claimant files their application. *Ellison*, 355 F.3d at 1276 (citing 20 C.F.R. § 416.912(b)(1)).  "[Howard] makes no claim that the ALJ failed to do this; rather, [her] focus is on the period after [her] filing." *Id.*  The ALJ maintained no obligation to develop the medical record after June 3, 2018. *Id.*  Furthermore, the ALJ stated her intent to further develop the record multiple times during the November 2, 2021, hearing.  (Tr. 494-96, 506-513, 522).  Thus, Howard does not enjoy entitlement to relief on a contention the ALJ failed to adequately develop the record.

## CONCLUSION

For the foregoing reasons, the court **AFFIRMS** the Commissioner's decision. The court will enter a separate final judgment.

**DONE** this 29th day of August, 2023.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE